**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

William P. Scurry and J & W Corporation of Greenwood, Appellants,

v.

South Carolina Department of Health and Environmental Control and Simmons Family Holdings, LLC, Respondents.

Appellate Case No. 2023-001592

———————————

Appeal From The Administrative Law Court
Robert Lawrence Reibold, Administrative Law Judge

———————————

Unpublished Opinion No. 2025-UP-419
Heard October 7, 2025 – Filed December 10, 2025

———————————

**AFFIRMED**

———————————

Thomas C. Taylor, of Law Offices of Thomas C. Taylor, LLC, of Bluffton, for Appellants.

Bradley David Churdar, of Charleston, for Respondent South Carolina Department of Health and Environmental Control.

Michael Smoak Traynham, of Maynard Nexsen, P.C., of Columbia, for Respondent Simmons Family Holdings, LLC.

---

**PER CURIAM:**  This is an administrative law court (ALC) case about a critical area permit to build a marina on Hilton Head.  Simmons Family Holdings, LLC (Simmons) applied for the permit.  William Scurry and his company (collectively, Appellants) operate a commercial barging business out of a neighboring marina.  Appellants oppose the proposed marina because they believe their barging operation will not be able to safely navigate around the new marina and its patrons.

The Department of Health Environmental Control (DHEC) granted the permit with certain modifications to address Appellants' concerns.  The ALC upheld the permit and further modified the new marina's design based on recommendations from an expert who testified at the hearing.  On appeal, Appellants continue to challenge the permit, arguing the ALC erred in relying on inadmissible hearsay and that its decision to uphold the permit is not supported by substantial evidence.  We respectfully disagree with these arguments and affirm the ALC's judgment.

## BACKGROUND

Appellants operate their commercial barging business out of Broad Creek Marina on Hilton Head.  The barging operation's chief purpose is to provide resources to the residents of Daufuskie Island, and the barge has been doing so for over forty-five years.  The barge is 120 feet long with a 40-foot ramp attached to the front of it.  A "push boat" navigates the barge back and forth to Daufuskie.

The barge's home base, or landing, is located toward the end of a short and narrow tidal creek known as "Barge Creek."  Barge Creek runs perpendicular to Broad Creek, a very large tidal waterway that the barge uses to travel to and from Daufuskie.  Broad Creek is a coastal waters "critical area" subject to DHEC's permitting authority.  *See* S.C. Code Ann. Regs. 30-1(B)(1) (Supp. 2025).

Simmons has owned the property next to Barge Creek for almost 100 years and currently leases the land to a restaurant.  A couple of years after the restaurant opened, Simmons applied for a permit to construct a marina off the property.  This request also came two years after Simmons' former dock was destroyed in a hurricane.  The former dock was in roughly the same place as the proposed marina.

The primary purpose of the proposed marina is to promote "docking and dining" at the restaurant on Simmons' property and to permit kayaking tours in the area. The proposed marina is set to provide short-term dockage for up to twenty-eight boats. During the permit review process, Appellants were adamant the proposed marina would be a significant impediment to the barge's ability to navigate in and out of Barge Creek. After some back and forth between Appellants, Simmons, and DHEC, the permit was modified to move the marina twenty feet further from Barge Creek and to include three-pile "dolphins" against the western piers closest to Barge Creek. DHEC granted the permit as modified.

Appellants challenged the permit before the ALC. The ALC upheld the permit but directed DHEC to modify the design as proposed by Simmons' expert witness. The order also directed Simmons to post signs at the marina warning recreational boaters of the risk of collision with the barge as it moves in and out of Barge Creek. Appellants' motion to reconsider, which asked the ALC to reappraise much of the evidence from the hearing and contended the court relied on inadmissible hearsay in deciding to uphold the permit, was denied. This appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act governs this court's review of ALC decisions. S.C. Code Ann. § 1-23-610 (Supp. 2025). The court is "limited to determining whether the ALC's findings were supported by substantial evidence or were controlled by an error of law." *Engaging & Guarding Laurens Cty.'s Env't (EAGLE) v. S.C. Dep't of Health & Env't Control*, 407 S.C. 334, 341, 755 S.E.2d 444, 448 (2014); *see also* § 1-23-610(B) (explaining the court of appeals may reverse the ALC's decision if it is "affected by [an] error of law" or "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record").

## SUBSTANTIAL EVIDENCE

Appellants contend the ALC's decision upholding and modifying the permit is not supported by substantial evidence. To uphold the ALC's decision, "[we] need only find, looking at the entire record on appeal, evidence from which reasonable minds could reach the same conclusion as the ALC." *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Env't Control*, 411 S.C. 16, 28, 766 S.E.2d 707, 715 (2014).

First, Appellants believe the proposed marina will infringe on their ability to navigate their barge in and out of Barge Creek. Throughout the ALC hearing, there was a particular emphasis on the difficulty of the barge entering Barge Creek. The

barge typically runs close to the Broad Creek Marina pier as it starts its left turn into Barge Creek. The barge must then navigate between Broad Creek Marina and the proposed location of Simmons' marina before entering its landing space. The parties deemed this area—between Broad Creek Marina and the proposed marina—the primary "area of concern." Boats going in and out of the slips on the Barge Creek side of the new marina would briefly navigate through this same area.

Regulation 30-12(E)(l)(j) of the South Carolina Code (Supp. 2025) provides permitted "[m]arinas shall not restrict the reasonable navigation or public use of State lands and waters." The ALC focused on this regulation during its review of the requested permit. Neither party seems to dispute that operating a 120-foot-long barge is challenging. However, as we will explain below, the record contains ample support for the ALC's finding that the proposed marina will not create an unreasonable restriction on navigation as prohibited by regulation 30-12(E)(l)(j).

This case was, in part, a battle of experts. Appellants' witnesses—current and former employees qualified as experts "in the field of barge operations in the area of the Barge Creek and Broad Creek confluence"—testified that it would be "impossible" for the barge to operate around the proposed marina, particularly based on the tide at the time the barge "must" come into Barge Creek and the specific, hard and fast maneuver Appellants believe is the only option to get the barge into the creek. Simmons' expert (O'Quinn), who was qualified in commercial and recreational navigation, barge captaining, navigating tidal channels, and marina and dock construction with over forty-five years of experience, disagreed. O'Quinn testified that he understood Appellants' concerns but opined that the proposed marina will not impede the barge's navigation. He explained that the space between Broad Creek Marina and the proposed marina is sufficient for a qualified captain to pilot the barge through without incident. The ALC noted that the barge operated around Simmons' former dock for almost thirty years with no issue, and that the former dock was of the same general length as the proposed marina and located twenty feet closer to the area of concern.

The ALC additionally relied on the fact that Appellant Scurry submitted an alternative design for the proposed marina with basically the same footprint as the permitted design and admitted he would have no issue if the marina was built as he proposed. The ALC found, and we concur, that this was evidence the barge could safely operate around the proposed marina's structure. The only difference between Scurry's proposed design and the permitted design is the location of the walkway providing access to the dock's "fingers." Scurry's design has the walkway running up against Barge Creek with all dock fingers running away from Barge Creek. The

permitted marina has a central walkway with some dock fingers going towards Barge Creek and others going away from Barge Creek.

With the ALC's decision to modify the permit as O'Quinn recommended, the footprint of the structure is now smaller. The modified design O'Quinn suggested significantly shortens the dock fingers going towards Barge Creek and adopts the five-pile dolphins as both Scurry and O'Quinn suggested. O'Quinn explained there would be no difference at all in terms of how the barge would navigate around the structure of Scurry's design versus O'Quinn's modified design, which the ALC adopted. We understand Appellants' concerns about navigating around the new structure, but the evidence recited above well supports the ALC's decision that the proposed marina, especially as modified, will not unreasonably restrict navigation.

Appellants' second objection is that recreational boaters using the proposed marina will inevitably encounter the barge and that tragic accidents will ensue. Scurry proposed that his layout for the new marina (with dock fingers going away from Barge Creek) would eliminate smaller boats entering and leaving Barge Creek. O'Quinn explained that recreational boaters already go in and out of Broad Creek Marina with nothing stopping them from entering or getting close to Barge Creek. Additionally, Simmons' previous dock was used for commercial purposes like kayaking, and no evidence was presented that those operations affected the barge's daily functioning. Several witnesses also testified to similar conditions in terms of maneuvering around other structures at Freeport Marina, where the barge lands upon its arrival to Daufuskie and where there can also be a substantial number of recreational boaters.

Appellants also raise concern over their belief that recreational boaters will likely consume alcohol at the restaurant on Simmons' property to the point of impairing their abilities to safely operate their boats. However, Appellants presented no evidence to support this, and there was evidence presented that the barge, and all commercial vessels, are constantly navigating around recreational boaters throughout Beaufort County, including in other areas where alcohol is served, like Freeport Marina. Additionally, the ALC heard evidence about ways to warn recreational boaters of an incoming barge—some required by regulation—including the use of a horn and bright spotlight. Commercial and recreational boaters must abide by boating rules and regulations that aim to ensure safe operations through public waterways. Appellants did not present any concrete or even circumstantial evidence that the barge could not safely operate around recreational boaters using the proposed marina.

A final but forceful consideration against Appellants' arguments regarding the structure of the marina and the increase in recreational boaters is the minimal amount of time the barge operates through the area of concern. The barge runs in and out of Barge Creek to Daufuskie about three days a week and spends about four minutes per run (about twelve minutes per week) navigating through the area of concern. Testimony established that these runs often occur when the restaurant on Simmons' property is either closed or "slow."

Our review is limited to deciding if the ALC's decision is supported by substantial evidence. *EAGLE*, 407 S.C. at 341, 755 S.E.2d at 448 (explaining this court is "limited to determining whether the ALC's findings were supported by substantial evidence or were controlled by an error of law"); *Kiawah Dev. Partners, II*, 411 S.C. at 28, 766 S.E.2d at 715 ("In determining whether the ALC's decision was supported by substantial evidence, the [appellate court] need only find, looking at the entire record on appeal, evidence from which reasonable minds could reach the same conclusion as the ALC."). As explained above, we find the record adequately supports the ALC's decision to uphold the permit as modified.

**EVIDENCE-SPECIFIC ARGUMENTS**

Appellants also attack the way the ALC construed specific items of evidence. Appellants contend that the ALC should not have considered the location of Simmons' former dock; misconstrued part of Appellants' current barge captain's testimony; and mistakenly relied upon the barge's practices at Freeport Marina, which are "dramatically different" than at Barge Creek. The ALC's thorough order on reconsideration handled these arguments in detail. We do not see any ground to reverse the decision for two reasons.

First and foremost, the ALC is tasked with interpreting, weighing, and construing evidence, and absent a clear error, which we do not see, we are not able to overrule the ALC's interpretations or evidentiary findings. *See* § 1-23-610(B) ("The [appellate] court may not substitute its judgment for the judgment of the administrative law judge as to the weight of the evidence on questions of fact."); *id.* (explaining the court of appeals may reverse the ALC's decision if it is "affected by [an] error of law" or "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"). Still, as outlined in the previous section, we tend to agree with the ALC's view of the contested evidence.

Second, even if the findings on these particular points were mistaken, we find there is substantial evidence supporting the ALC's decision. *See State v. Ostrowski*, 435

S.C. 364, 401, 867 S.E.2d 269, 288 (Ct. App. 2021) (explaining the harmless error doctrine simply means, "*whatever doesn't make any difference, doesn't matter*").

**HEARSAY**

Last, we address Appellants' argument that the ALC erroneously accepted and relied on inadmissible hearsay presented during the testimony of DHEC's permitting manager. Just as the ALC noted in its order denying reconsideration, we find that even if it was error to admit the employee's statement, that error would be harmless. As described above, there is ample substantial evidence supporting the ALC's adoption of the modified permit irrespective of Scurry's alleged statement to the DHEC employee. *See id.* (same as above).

**CONCLUSION**

We readily acknowledge and fully appreciate the importance that Appellants' barging operation has to Daufuskie Island. We have considered Appellants' arguments carefully. We simply cannot agree that, on this record, the ALC's decision to uphold the permit with modifications is clearly erroneous or will cause the barge to cease operations. Therefore, the ALC's order is

**AFFIRMED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**